Thank you, Your Honor, and good morning. May it please the Court, my name is Eric Zimmelman and I represent Conti, LLC. Conti was the attempted intervener in the district court action that was commenced by Sterling and Wilson, who was the general contractor to Conti on the Lundhill Solar Facility down in Klickadack County. Conti was the electrical subcontractor, or one of them, and a dispute arose between the parties. Sterling and Wilson terminated Conti. Conti believes that was a wrongful termination. Obviously, we're not here to discuss the merits. But ultimately, the parties have an agreement, that is to say, Sterling and Wilson and Conti have an agreement to arbitrate. And in fact, they are arbitrating. They're arbitrating right now. And it's scheduled for arbitration next month. We actually, an update to the briefing, the arbitrators recently moved the hearing dates into April of next year. May I, I want a clarification on what you're appealing initially. Are you appealing only the stay decision or also the intervention decision? Yes. So I don't know how we can have a stay without an intervention, right? So the Section 3 talks about an application by one of the parties for a stay. We're not a party until we intervene. So we're asking to intervene for the sole purpose of seeking a stay. Well, it's a little confusing, I think, because in your briefing, when you talk about jurisdiction, you're talking about jurisdiction solely under the FAA. Absolutely. And on that point, I want to come back and talk to you about the Western Security case. So is your jurisdiction predicated solely on the FAA? Well, I think certainly our appellate jurisdiction is based solely on the FAA. Okay. And our jurisdiction to ask the court to stay the proceedings is based upon the FAA. It is the essence of our action. So if the court were to determine that there's no jurisdiction under the FAA with respect to the stay, then you would be out of the Court of Appeals. Is that right? Well, if the court determines that there is no jurisdiction for the stay, there is no point in our intervention, right? It's just a practical matter. That is the only reason. We want nothing to do with that district court action, right? Our position is that's between the surety and Sterling and Wilson. This happens all the time in construction cases. When you have a bond principal, that's Conti, and you have a surety, in this case the Zurich and Fidelity are the sureties. And very often, be it a higher tier suing a lower tier or a lower tier suing a higher tier, there is a bond, maybe a payment bond, very often in Maryland Act cases, or it's a performance bond. Sterling sued the bonding people but did not name Conti. That is correct. How can the bonding company—and I'll ask counsel this—how can they respond to Sterling's action until the arbitration determines whether and to what extent Conti has performed or not performed? Well, that is precisely our argument, Your Honor. The issues referable to arbitration are the threshold question with respect to the claims against the bond. That is to say, in Section 2 of the bond, a failure of performance by Conti, and in Section 3, the lack of a failure of performance by Sterling and Wilson. Those questions are exclusively in front of the arbitration panel, pursuant to the agreement between Sterling and Wilson and Conti. And the district court, with all respect to the district court, has no business considering those questions. The court has to wait to hear what the arbitration panel says about that and can then apply that to its determination of the applicability of the bond, whether there is any right to receive any money from the bond. For example, if the arbitration panel were to determine that Conti was in default and owes Sterling and Wilson $50 million, in which case— Or nothing at all. Or that they don't, right? Or that Sterling and Wilson owes us money, which is what we claim. So that's the basic quandary that we're in. We're seeing this action over here that doesn't involve us as a party, so we can't step in and say, time out, we need a motion to stay, because they have excluded us from that because, of course, they're arbitrating with us. And then the question is, well, are you bringing a motion to arbitrate in reliance on the Schneider decision? Well, that's an excellent question. No, we're not. But what we are doing is we're asking the court to enforce the terms of the arbitration agreement. Well, that may be, but I've got to step back to basic jurisdiction, because normally, in a typical case, we wouldn't have appellate jurisdiction on a discretionary stay. However, we do if you look at certain provisions of the FAA. Right. But it seems to me that your case may rise or fall on whether you fit within Western Security Bank, because there, of course, I thought you were only seeking this action pending arbitration. It seemed to fit right into that case. Tell me why I'm wrong. And I apologize, Your Honor. I do wear hearing aids, and I have a hard time hearing at times. No, no problem. Let me just give you a shorter question for my purposes, too. But you would agree that generally we don't have appellate jurisdiction over a denial of a discretionary stay, right? Absolutely. Okay, so that's the starting point. But then there is this carve-out in the FAA, correct, under section 3. But when I look at Western Security Bank, it seems to me you fall in there and we don't have jurisdiction. Tell me why I'm wrong. And respectfully, you're wrong, because in that case, first of all, I've read it repeatedly, looking for the specific language that says you must bring a motion to compel arbitration. It doesn't say that. That's the argument that was made by one of the parties, and the court acknowledged that the court had never considered that question, but it actually didn't decide that. What it said is you have to look below the surface of the motion. Just because a party says it's a motion under section 3 and an appeal under section 16 doesn't mean it is. You have to determine what is the essence of the motion. And in this case, the essence of the motion is to enforce the Federal Arbitration Act, which is incorporated into our contract, and the bond, which incorporates our contract. And the bond itself was a form from the contract. These things are inextricably united. Did the Western Security or Schneider case, whatever, involve actual arbitration, actual pending arbitration, or simply the prospect of it? I don't know, but what I do know is that, of course, it wasn't a construction action, right? And it wasn't a bond case. It was a very different case. It involved essentially an argument that, well, we need to be able to get an arbitration decision over here as to our claims of fraud and the inducement in entering into this agreement over here before these guarantors can come and sue us or the bank can sue us as the guarantor. We first have to have this thing over here. And really what they said, and I think if you read the decision, the court says, look, the Wyoming doctors are basically saying we're going to have irreparable harm if we don't, and it's essentially on an injunction-type standard rather than on a Section 3 standard. Here it's just clearly a Section 3 standard of issues referable to arbitration, right? The issues that are referable to arbitration are exactly, as Your Honor pointed out, whether or not we're in default, they're in default, to what extent, how much dollars are involved, plus or minus. And instead what we have is a district court that appears prepared to proceed to trial on the very same issues that are being arbitrated over here. And that's why Section 3 applies, why Section 16 applies. But you're not seeking to be in the arbitration, correct? I'm sorry, what? You're not seeking to be in the arbitration? Well, we are in the arbitration. But not through the stay motion. I don't know how we can ask the court to enforce, to require Starling and Wilson to engage in an arbitration that's already being engaged again. The question is. You just want to stay the district court. Well, what we want to do is to enforce our exclusive right to have those issues referable to arbitration decided in arbitration. That's why we're enforcing our arbitration rights, and that's why the Federal Arbitration Act applies, in addition, of course, to the fact that it is expressly adopted by the agreement. Is it fair to the bonding company to allow the case to proceed absent the arbitration? The bonding company is only responsible upon a determination that the insured, that's your client, failed to perform or failed to perform adequately. And that issue, as you've argued, has to be determined by arbitration. But is it fair to the bonding company to allow that matter to the dispute, have Sterling address that dispute in the litigation as it currently exists without the arbitration? Yeah, and plainly not, Your Honor, and more than that. It's unfair to Conti, who has an indemnitory. Well, I assumed it was you thought it was unfair to you. But what is it?  The bonding company is, I understand bonding and the construction circumstances, only responsible to the extent that your client failed to perform or failed to perform adequately. Correct? That is absolutely correct. And the only place, as I understand it, that can take place is in arbitration. That is correct. That is what the agreement says. And there's no way without effectively amending the agreement to say, well, since there's a bond and you've decided to go sue the bonding company alone, we're going to go ahead and decide that your agreement doesn't make it an exclusive determination by the arbitrators. It's going to be subject to determination in two separate forums, right? How that ever works itself out, I mean, the possibilities of inconsistent results just boggle the mind. But that isn't what the agreement says. And, again, the agreement and the bond are united by self-mutual incorporation. It can't be interpreted to create a separate right of action in a different forum for the very same questions. So, counsel, I have a question about Section 11 of the bond agreement. There's a modification there to that section. Is it your reading of that, that Zurich is required to arbitrate with Sterling, disputes over whether your client, Conti, performed under the subcontract? Section 11, and specifically, Your Honor, is addressing that that requires the institution and a court of competent jurisdiction. If I understand it, that's simply a period of limitations. Are you referring to some different section, Your Honor? No, it is Section 11. And then if you look at the modification on the following page on ER-229. Oh, the Section 16 modifications you're referring to. Yes, I apologize. So Section 16 modification, but it's modifying Section 11. Ah, notwithstanding the foregoing, I apologize, Your Honor. You hit me with one out of left field. The surety hereby consents that a contractor's sole option to join during consolidation of any dispute resolution proceedings. Okay. In this case, the contractor, first of all, that would be us in this case and not Sterling and Wilson because Section 15 redefines who contractor and owner are when it involves a sub and a general. We didn't ask to be consolidated, right? What we asked for was to proceed in our arbitration against Sterling and Wilson. They did the same. That's where we're at. That's what we're doing. I don't know that that somehow creates consent or creates jurisdiction on behalf of the district court to consider these issues that are solely referable to arbitration. I don't think you understood my question. My question was actually basically supporting what you just said. I said, does this modification require Zurich to arbitrate with Sterling disputes over whether Conti performed under the subcontract? Does it require the surety to arbitrate? I don't believe it requires the surety to arbitrate, and nobody has asked the surety to arbitrate. And, frankly, sureties are always reluctant to arbitrate. Plus, let's remember that Sterling and Wilson has pointed out that there's a Washington statute that says you can't force an insurance company, you can't force somebody to arbitrate. And we are certainly not asking for that, right? Our position is that statute is irrelevant to our analysis because we're not saying to the court, you need to dismiss this case for arbitration. We're saying you just need to put the brakes on until we get these issues that are referable to arbitration determined in arbitration. And I'm about at my five-minute mark. If you have another question, otherwise I'll be happy to sit down. Thank you.  All right. Mr. Goodfriend. Thank you, Judge Yalba. May it please the Court. Howard Goodfriend, representing the appellees Sterling and Wilson at council table with me. It's trial counsel Justin Scott. A few points in rebuttal and to answer some of the questions that you just heard. Starting with, can Zurich be joined in the arbitration? I think the last answer to that question is completely accurate. As a matter of law and public policy, Washington makes void any agreement to arbitrate in a surety relationship. And that is pursuant to the McCarran-Ferguson reverse preemption provision, which is 15 U.S.C. section 1012, no act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any state for purpose of regulating the business of insurance. RCW 48.18.200 is such a law. It provides expressly no insurance contract covering subjects to be performed in the state of Washington, as this subcontract is and the surety obligation is, shall contain any agreement depriving the courts of the state of the jurisdiction of action against the insurer. And under Washington law, a surety is an insurer subject to regulation under Washington's insurance code. So let's talk about section 3 of the FAA. Conte did not move to intervene in a suit or proceeding brought upon an issue referable to arbitration under an agreement in writing for such arbitration. Because although Zurich's bond may incorporate by reference all the provisions of the subcontractor, it cannot incorporate by reference the arbitration provision. There is simply no agreement providing for arbitration in this case, which makes it... Why is Zurich in all of this? Where's the bonding company in all of this? Well, the bonding company initially moved to stay the litigation pending the arbitration between Conte and Sterling. And? And the district court denied that motion in its discretion. It offered reasons why, and it reiterated those reasons in denying this motion, which brings me to my second point, which I think... Just so I'm clear, the bonding company is not a party to this appeal? The bonding company is not a party to this appeal. The bonding company tried to join in this appeal. Its appeal was rejected for lack of standing.  You just said that.  Now, is it your position that your client, Sterling, can directly sue the bonding company and prove that Conte failed to perform? Yes, and that happens all the time. And if you look... And we're really not talking about intervention anymore, because they've conceded that intervention is not at issue. But if you look at the intervention cases, and there are probably a dozen or so cited by the parties, mostly district court actions, where a surety intervenes or vice versa, a contractor seeks to intervene, and sometimes it's granted, sometimes it's denied. But when it's denied, it's denied on the basis of the fact that the surety adequately represents the contractor's interest in that litigation. And absent some sort of conflict, some sort of compelling showing, is what the court required in Perry, that the presumption is that the surety can adequately represent the contractor's interest. Which brings me to my second point in response to your question, Judge Hawkins. These, and the district court, found so in its order. These cases do not overlap 100%. Now, the issue of Conte's default will certainly be present in the surety litigation with Sterling, undoubtedly. But there are other issues. And in fact, if you look at the amended complaint, you'll see what those other issues are. Zurich can be liable to Sterling for all kinds of reasons, apart from the default on the bond. It could have violated the insurance code. As we allege, it lost the notice. It didn't provide a substitute contractor upon notice of default. It didn't give Sterling the rights that it bargained for in that agreement. So your client could recover under the bond in its action against Zurich, even though a subsequent arbitration between your client and Conte determined that Conte did not default and adequately performed? It's possible, yes. I mean, if you look at the Washington – What in God's green earth is sensible about that? Well, if you look at the Washington insurance cases, there's a whole, you know, ream of cases involving coverage by estoppel, where an insurer breaches its duty of good faith to an insured, and its coverage defenses are out the window, because as a matter of policy, Washington provides that remedy. Now, that's – I'm not saying that's what's going to happen here, but it is possible that it happens here. And it's possible also that Sterling recovers for violation of the Consumer Protection Act, for the insurance code, even if the issue of Conte's breach is tried and is rejected in the district court. So there is an overlap, absolutely. But we're talking – let's move back to the jurisdictional issue here, about whether the district court had to grant a stay in the absence of any motion to arbitrate under Section 3. That is not the way I would describe that. I would describe it as should have. But go ahead with your argument. Well, and that gets to my other point. This standard espoused by Zurich, not only is it unsupported by any FAA case law, in which every case in which jurisdiction is found under Section 16 is when a party is seeking to arbitrate and to stay. You're talking about a defense that Zurich has raised in your litigation against them? We're talking about this court's jurisdiction to consider the denial of a motion to stay in the absence of a motion to arbitrate. Early on you told me Zurich is not a party to this appeal, correct? That's true. Where does Zurich's position that you've just described come to light? A defense that they've articulated in your litigation against them? Well, the only thing that Zurich has raised in this litigation with respect to this issue is they have sought a stay. There have been motions for summary judgment that have been entirely unrelated to the issue of Conte's default under the subcontract, basically relating to Zurich's compliance with the conditions of the bond and Conte's contravailing compliance. Those issues have been litigated. But as to this issue, the only thing that's happened in the district court with Zurich is Zurich sought a stay. It was denied. It moved to intervene. Or I'm sorry, it moved to join in Conte's appeal, and that was denied. Let me talk about – go ahead. But that's not before us on appeal, is that right? No. No. Okay. He just wanted to know what Zurich's interest was. Okay, I understand. And I hope I answered your question, Judge Hawkins. You did. Okay. So that's Zurich. Now let's talk about your client and jurisdiction. Right. Again, I'll reiterate that in the absence – and this is why this case is just like Western Bank v. Schneider. In the absence of a motion to compel arbitration, Section 3 does not grant jurisdiction over a simple request for a stay. And it's a matter of really good policy here. Notwithstanding the fact that Conte seeks to expand federal jurisdiction beyond that expressly set out in Section 16 to encompass any case, really, any case. So let's go back to – well, Section 3 itself doesn't say anything about a motion to compel, right? No. It requires, though, that there is a suit or proceeding brought upon an issue referable to arbitration under an agreement to arbitrate. Okay. This suit or proceeding is between Zurich and Conte. And the argument that Conte has been making is because the bond incorporates by reference the subcontract. And because the subcontract has an arbitration provision, therefore, the bond itself is an agreement in this lawsuit between Zurich and Conte that provides for arbitration. Our answer to that is there is no such agreement for arbitration because as between Zurich and Conte, it is void based upon Washington law. So that brings you right back to Western Security Bank. Just like the doctors who were litigating the validity of their guarantee, which had nothing to do with – there was no incorporation by reference of an arbitration provision in the district court litigation. But when they sought a stay, there was no agreement to arbitrate. And the fact that there was – Let's go back on the steps. The Schneider, Western, whichever we want to call it, that was arbitration of an affirmative defense, right? That's true. And here we have a prerequisite to liability as a foundation. It's one of the prerequisites to liability. Now, Zurich, of course, has many other defenses besides those that Conte asserted, but it has asserted all of Conte's defenses. Right. So then Conte says, well, by the terms of the bond contract, the breach has to be litigated in this case. You then say, well, wait, we have Washington law, right? Right. And therefore, that argument goes out the window. The argument that there's an enforceable agreement to arbitrate in the district court action is gone. Is gone. Yeah. So now we're back to the motion to stay in front of the district court here. Which was basically a discretionary motion to stay. Right. Vis-a-vis your client. Which is not an appealable order for good reason, because the district court does and should have broad discretion to manage its docket, to determine whether a stay will further the interests of judicial economy, will provide the parties the relief that they're entitled to. All these things that Judge Bastian considered in denying a stay. It's not an appealable order. And I think Conte's argument here would vastly expand federal jurisdiction, because there are all kinds of cases where the parties are litigating, and one of the issues necessarily involves somebody's liability under a separate agreement out there that has an arbitration clause. Think of vicarious liability in tort actions, where the employer and the employee are litigating in an arbitration about whether they breached the duty of care and thus the contract. It's the same issue that's being litigated in the tort action against the employer. Why didn't you name Conte in your action? Why didn't we name Conte in the action in district court? Because we had an agreement to arbitrate with Conte. And we honored that agreement by engaging in arbitration with Conte. In an arbitration that's going to be heard before the Zurich action gets tried in district court. So, I mean, what's the prejudice to Conte here, really? So would you go back then and explain, in your view, the relationship between Section 16 and Section 3? Yes. Section 16 simply states that the denial of an order under Section 3 is, among other types of immediately appealable orders, that that is an order that may be appealed. So we can talk about Section 16, but really the issue is, is the Conte motion to intervene and stay a motion that's brought under Section 3 of the FAA? And because they're not seeking arbitration. It was a little confusing to me because he says, well, I mean, I don't think they appealed the motion to intervene, but he says, well, we did indirectly because we filed this motion with respect to the stay. And if the district court was wrong, then we would go to the intervention. Do you agree with that? Well, I think it's a significant concession because, you know, in their briefing, they addressed the denial of intervention as a matter of right. Right. Which could be an appealable order if it's done for anything but timeliness grounds, I guess. And we briefed that. But our point was this, and I think this is their concession that they agree with us, where you're seeking solely to intervene not to participate as a party in litigation, but to stay it. You're basically not really, you know, seeking. I mean, in Rule 24, you've got to file an answer and raise all the things you're going to do in the litigation. That's not what they did. They moved for a stay. And you can look at it as intervention, but, you know, let's look at it for what it is. They moved to accomplish what you earlier in your argument said is going to happen anyway. And it is. Correct? And it is. They moved to stay everything, not just this one issue. They moved to stay the entire case, which involves many other issues besides Conte's liability under the subcontract. So the district court, when it said there are other issues in this case, that's what it was referring to. It wasn't the sole issue. Other issues that allow your client to collect under the performance bond? To collect under the performance bond, we have to show not only that Conte breached, but that Zurich's defenses to its liability under the bond are without merit. And they've raised many of them. And those have been at issue in the motions practice in district court. So there are other issues. And there are other claims, as I've said, by Sterling against Zurich, that will have to be adjudicated whether Zurich is liable under the bond or not. And that's what the district court meant. Such as? Such as did they breach the Washington Insurance Code by failing to acknowledge the notice? Did they breach its duty of good faith by failing to provide the remedies that Sterling is entitled to upon notice of default? Did they deprive Sterling of its rights under the Washington Insurance Code? And the answer to those questions can be yes, even if ultimately it's found that they don't owe because there was no breach by Conte. That's why, I mean, I can cite you some of the Washington cases that deal with that. But that is, in fact, what the Washington Insurance Code provides. It's very friendly to consumers of insurance. And under the Colorado Structures case, the Washington Supreme Court said a principal under a bond is an insured. The surety is an insurer. And you're entitled to those remedies. So what, as a matter of procedure and also timeline, the arbitrations now set, as indicated, for April? It's been moved to April? April 2025, correct. So if we were to determine there's no appellate jurisdiction here under Section 3, then these other issues would go forward in the district court? Well, they would go forward in the district court under a trial that's currently set for three months after the arbitration. After? Right. Yeah, they would- Disadvantage anyone? Well- I guess it depends on your point. It does. And I would also point out that the reason there's a different date now for the trial and for the arbitration is because the parties are pointing these things out and asking for relief and getting it when necessary. And that brings me back to my other point about discretionary stays. That's what this is. That's basically what the district court evaluated. And, you know, district courts do that all the time. And, again, if you look at the bond cases where a certee in a district court action is claiming or a party in the district court action is claiming that they want-they're appealing the denial of a stay, where the court does have jurisdiction, it's because they're not in Washington State. There's an enforceable-maybe it's incorporated by reference, maybe it's in the bond. There's an enforceable arbitration provision between the certee and its principal. And if they move to stay and compel arbitration, it'll be granted. But where there isn't, district courts, in the exercise of their discretion, often allow the certee action to go forward while there's a separate arbitration pending. And they often allow or deny intervention on the very basis that they are perfectly competent to represent the obligor's interest in the litigation. Well, normally we wouldn't have-you keep emphasizing discretionary, but normally if it was a denial of a discretionary stay- There is no appellate jurisdiction. No appellate jurisdiction. Right. So the Section 3 is a narrow carve-out. And it is narrow, and it should be narrow, because federal jurisdiction, you know, you have to prove it. You have to, you know, show that Congress intended it. And as, again, I said earlier, the rule that Conte is espousing would open the door to federal jurisdiction of the denial of a stay any time anyone in a district court action can point to some other agreement that may be at issue, that has-encompasses an issue, that is in arbitration in a separate proceeding. That is a huge expanse of federal jurisdiction. It's bad policy, and it deprives the court of the discretion that it should have in evaluating these things free of appellate interference. So we ask the Court to affirm. Thank you, Mr. Goodfriend. Thank you. Mr. Zimbelman? So counsel has just told us that as the litigation exists before Judge Bastien, the trial on the merits of the dispute between Sterling and the bonding company cannot take place until the arbitration is concluded. Is that correct? It is my understanding that as currently situated, the trial date in the district court action is still later. I think Mr. Scott can confirm that as well as trial counsel there. It's later, not much, a couple of months later than the date the arbitration hearing is currently scheduled to commence. And I've got to correct Mr. Goodfriend. The reason why the date was moved out from September to April is because Sterling and Wilson, over our objection, requested it. So my point is it shouldn't matter. It shouldn't be a race to the steps of the arbitration room or the courthouse as to who gets that decision first as to whether or not Conte's breached the contract or whether Sterling and Wilson breached the contract or whether they both did in some fashion and neither or both are prevailing parties. That's a question that is solely for the arbitrators under our agreement. It is an exclusive remedy, and they are circumventing that exclusive remedy. I hope I've answered your question because I have a couple of very brief rebuttal points I'd like to make. Mr. Goodfriend argued that we aren't really intervening because the only thing we're asking for is a stay. And yet if you read the Schneider case, the lambing doctor's case, it relies heavily on the Conrad decision out of the Tenth Circuit, right? It says we find this analysis persuasive. The analysis is this. If the essence of the movement's request is that the issues presented be decided exclusively by an arbitrator and not by a court, then the denial of that motion may be appealed under Section 16A. If, on the other hand, the movement in the district court requests a judicial remedy that is inconsistent with the position that the issues in the litigation may be decided only by the arbitrator, the movement is no longer proceeding exclusively under the FAA and has forfeited their right to an interlocutory review under Section 16A. In other words, if we did what he's asking, we would be forfeiting that right. We are asking simply for a stay and for the court to evaluate that motion under Section 3. And Section 3 says if any suit or proceeding is brought upon any issue, not all issues, not every issue, any issue referable to arbitration, then the court is to stay the action. Not part of the action, the action. So I think we are doing precisely what the statute requires. We're doing precisely what this circuit has said in Schneider is required to get an appropriate decision. As for the argument that we're somehow expanding jurisdiction, appellate jurisdiction, that is hardly the case. In fact, the opposite is true. What Sterling and Wilson is asking this court to do is to ring the bell for litigants to separate bond actions from arbitrations when the two are otherwise joined at the hip by agreement, as in this case. The agreement creates the bond, requires the bond, provides the form of the bond, and the bond incorporates the agreement by reference. They have to stay together. And any determination of liability on the bond, in this case, needs to be determined in arbitration. Your friend on the other side says that there are some obligations that the bonding company has, irrespective of whether your client performed, didn't perform, performed partially, performed adequately, et cetera. Do you agree? I agree. There are some other claims that they have brought. They've amended their complaint to assert those claims. And they're certainly entitled to proceed on those claims once the arbitration has concluded. We are not saying that they can't have those causes of action. We are not saying that those causes of action have to be arbitrated. We are saying just wait. Let's see what happens on the primary question, which is the liability of the bond. And the liability of the bond is 100% dependent on the determination at arbitration. Any other questions for me, Your Honors? Thank you very much. Thank you. All right, this matter is also now submitted. And that concludes our arguments for this morning. Thank you again to all counsel and our court staff. The court will now stand in recess. All rise. This court presented to stand adjourned. Thank you.
judges: HAWKINS, McKEOWN, ALBA